[Civ. No. 1270.   Second Appellate District.—April 15, 1913.]

### W. B. BARCKDALL, Respondent, v. SIMONS BRICK COMPANY (a Corporation), Appellant.

MASTER AND SERVANT—ASSUMPTION OF RISK.—An employee who undertakes a specific task, with knowledge of the danger incident thereto, assumes the risk.

ID.—DEFECTIVE APPLIANCES—HAND PRESS FOR MAKING BRICK.—In this action by an employee for personal injuries resulting from using a hand press in the manufacture of brick, the jury was justified from the evidence in finding that the employee did not have knowledge of the defective and unsafe character of the machinery, but that if he

did possess such knowledge, he did not understand or appreciate the danger, so as to exonerate the employer.

ID.—APPRECIATION OF DANGER—EVIDENCE.—In an action by an employee for personal injuries sustained in using a handpress in the manufacture of brick, it is not prejudicial to permit him to testify whether he appreciated the danger.

ID.—PLEADING—STATEMENT OF ULTIMATE FACTS.—A complaint should state the ultimate facts, rather than the chain of evidence upon which the plaintiff relies for a recovery.

ID.—ASSUMPTION OF RISK—CHANGE IN LAW—INSTRUCTIONS.—When the defendant in an action by an employee for personal injuries requested instructions as to the law of assumption of risk as it stood prior to the amendment of section 1970 of the Civil Code, the court's repeated modification of the instructions was not in this case prejudicial in accentuating that such statement was the law applicable to the case.

ID.—DUTY TO INSPECT MACHINERY—INSTRUCTIONS IN CASE OF NOTICE OF CONDITIONS.—Instructions as to the duty of the master to inspect machinery cannot be prejudicial to him where he has actual knowledge of defective conditions.

ID.—SAFETY OF MACHINERY—KNOWLEDGE OF EMPLOYEE—CONFLICTING EVIDENCE.—In an action by an employee for personal injuries, where the evidence is conflicting as to the safety of the machinery, as to whether the employer has notice of its defective condition, and whether the employee appreciated the danger, the determination of the jury in favor of the plaintiff will not be disturbed on appeal.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

Samuel Rosenheim, and M. E. C. Munday, for Appellant.

Morton, Riddle & Hollzer, for Respondent.

SHAW, J.—Action for damages for personal injuries alleged to have been sustained by plaintiff on account of defendant's negligence. Judgment was entered upon a verdict in favor of plaintiff, from which, and an order denying defendant's motion for a new trial, it appeals.

At the time of the injury to plaintiff he was an employee of defendant engaged in the operation of a hand press used in

the manufacture of brick. This press in its construction resembled an ordinary letter press. The table or under side of the press contained a mould wherein the operator with a scoop or shovel placed the material used in making the brick. The required pressure was applied by means of a screw to the foot of which was attached a die of the size to exactly fit into this mould, and which by turning the handle or lever attached to the screw, was raised and lowered as desired. After thus applying the pressure the die, by reversing the screw, was lifted from the mould and by a contrivance attached to the press for such purpose the brick was lifted from the mould and removed thence to the kiln. The top or upper end of this screw extended through an inverted arch consisting of one piece and to which upon the under side thereof was attached by two screws a bushing containing threads corresponding with those upon the screw and through which bushing the screw was operated in applying the pressure. The total weight of those parts of the press so attached to the under side of this inverted arch by the two screws was some two hundred and seventy-five pounds. At times the die intended to fit into the mould would catch on the side of the box and thus prevent its operation. When this occurred a pine block kept for the purpose was inserted in the press in a manner to obviate the difficulty, but such use thereof rendered it necessary for the operator to remove this block by hand. At the time in question, and after inserting this block for the purpose stated and while plaintiff was in the act of removing it, the two screws whereby the bushing was fastened to the inverted arch gave way, thus permitting the entire weight of the die, screw, and bushing to fall upon and mangle his hand.

The answer denies the alleged negligence on the part of defendant; admits that it employed plaintiff to operate the machine, but denies that it was defective or unsafe; admits that "on or about the thirty-first day of January, 1910, while he (plaintiff) was engaged in the discharge of his said labor and business as defendant's said employee and servant, and while he was in the act of removing with his right hand a block from underneath the suspended apparatus, . . . the said screws gave way and the whole of said apparatus and appliances suddenly fell and caught plaintiff's said right hand between the die connected with said apparatus and one edge of the mould

in said machine," etc., but avers that the injuries sustained by plaintiff were caused by his contributory negligence.

The chief contention of appellant is that the evidence is insufficient to justify the verdict. Conceding that the operation of the defective press by plaintiff while in the discharge of his duties was the proximate cause of the injury, it is nevertheless claimed that he was fully cognizant of the dangerous condition thereof, notwithstanding which fact he voluntarily and of his own accord continued to operate the same. "If an employee agree with his employer to undertake the performance of a specific task, either working in an unsafe place, or with unsafe and inadequate appliances, and in so contracting the employee knows and understands the danger of the situation, and knows and understands that the appliances are unsafe, and further appreciates the risks which may follow the use of such inadequate appliances, it is truly said that in these respects he has by his contract and by his assent relieved his employer from duty in these particulars." (*Vestner* v. *Northern Cal. Power Co.*, 158 Cal. 289, [110 Pac. 918].) While such defense was not pleaded, it appears that evidence touching the same was offered by both parties, without objection, upon the theory that the question of assumed risk on the part of plaintiff was an issue to be tried in the case, and the court, at the request of plaintiff, properly instructed the jury that "plaintiff is not barred from a recovery merely because he may have known that the machine so furnished him was in a defective condition, unless you further find from a preponderance of the evidence that he fully understood, comprehended and appreciated the danger of using such defective appliance, and thereafter continued in the use thereof." In addition to other facts established, the evidence showed that some two or three days before the accident the two screws attaching the bushing to the inverted arch had come out, as a result of which the appliance had fallen down. Plaintiff, as instructed, went to defendant's repair shop and asked the machinist to fix them, but the machinist being engaged with other work told him to do it himself; whereupon he obtained two new screws which he filed to the proper length and undertook to replace the fallen appliance by the use thereof and one of which he had properly inserted, when defendant's superintendent or foreman came along, and after learning of the trouble and being told by

plaintiff that the other screw did not seem to fit, asked plaintiff if the old screw would go back, and upon receiving an affirmative answer, said: "Put it back and go ahead; you are losing too much time." Plaintiff obeyed the order, made the repair as instructed, and continued to operate the press, when, as he was removing the block therefrom, it again fell causing the injury to his hand. Plaintiff testified: "I thought he (the superintendent) knew more about the machine than I did, because he was the superintendent, and I obeyed his orders. . . . I relied upon the judgment of Mr. Wilde (the superintendent) in ordering me to put that old screw back in place, that it would be without danger." Not only was plaintiff justified, under the circumstances, in relying upon the supposed superior knowledge of the superintendent, but the evidence tends to show that he considered it safe and did not understand or appreciate any danger from operating it in the usual and customary way, which was to use the block of wood when the die caught in the mould, and after such use remove it by hand. This method of operation, not only by plaintiff, but by others who operated the press, was well known to defendant, who never protested against such use, nor warned plaintiff of the danger incident thereto. The jury was justified, not only in concluding that plaintiff did not have knowledge of the defective and unsafe character of the machinery, but that if he did possess such knowledge, he did not understand, comprehend, or appreciate the danger incident to the use thereof. (Civ. Code, sec. 1970.) At the time when the screws first gave way permitting the appliance to fall, defendant was apprised of the fact, and while, as appellant contends, the repairing of the same was not within the scope of plaintiff's employment, nevertheless defendant, after being made acquainted with the defective condition of the machinery, ordered plaintiff to complete the repairs by putting in an old screw and to continue the work.

Defendant's objection to the question asked plaintiff as to whether or not he appreciated the danger involved in attempting to remove the block from the press by hand, was overruled and he answered: "No, sir, I did not, because I had the new screw in there, and I thought that, and with the old screw, would be sufficient to hold it, and I had been running it all day Saturday and in the afternoon of Friday, and it never

21 Cal. App.—44

had fallen any more, and I didn't think it would fall again."
The ruling was not prejudicial. While the question as to
whether or not he appreciated the danger was one for the jury
to determine from all the facts, still the effect of the answer
was merely an expression of judgment on the part of the wit-
ness based upon facts proven. (*Stewart* v. *Pittsburg etc. Co.*,
42 Mont. 200, [111 Pac. 723]; *McKee* v. *Tourtellotte*, 167
Mass. 69, [48 L. R. A. 542, 44 N. E. 1071].)

Defendant's objection upon the ground of want of identifi-
cation to the introduction of the two screws in evidence was
properly overruled for the reason that the record shows the
plaintiff in positive terms stated that they were the identical
ones used by him.

In the third brief filed by appellant it for the first time at-
tacks the action of the court in overruling its general and
special demurrer. Appellant in effect contends that the com-
plaint should state the chain of evidence upon which plaintiff
relies in order to recover, rather than the ultimate facts con-
stituting his cause of action. The point is wholly without
merit.

Finally, some seventeen in number of the voluminous in-
structions given by the court are attacked as constituting
error. Instructions 3, 4, and 5, as requested by defendant,
embodied the law relative to assumed risk by an employee,
as it stood prior to the amendment of section 1970 of the Civil
Code, and the court modified these by stating that plaintiff's
knowledge of the defective machinery should not deprive him
of the right to recover damages, unless the jury found that
he understood, comprehended, and appreciated the danger in-
cident to the use thereof. (Civ. Code, sec. 1970.) The con-
tention is that such repeated modification was prejudicial in
that it accentuated the fact that such statement was the law
applicable to the case, thus causing the jury to give undue
weight to plaintiff's testimony. The mere statement of the
point is sufficient answer thereto.

The court correctly instructed the jury with reference to
the duty of the master to inspect the machinery and see that
it was kept in proper order. (*Dyas* v. *Southern Pacific Co.*,
140 Cal. 296, [73 Pac. 972].) Furthermore, since the evi-
dence shows that defendant had actual notice of the condi-
tion thereof, it could not in any event have been prejudicial.

Instructions 4, 5, 6, and 7, given by the court, are attacked upon the alleged ground that the pleadings contain no issue upon which they could be based. These instructions are all based upon facts established by the evidence and correctly state the law applicable to such facts. It is claimed that instruction No. 11 is erroneous in that it is not based upon any allegation of the complaint showing that the plaintiff had complained of the defective machinery. While the evidence shows that plaintiff did not *complain* of the defective machinery, it does show that defendant was apprised of its condition and ordered plaintiff to repair the same by inserting the old screw and go on with his work. There is no merit in the contention.

As to other instructions, it is insisted that they constitute mere abstract propositions of law and were inapplicable to the facts upon any theory deducible from the evidence. Conceding this to be true, it is clear that the defendant, upon the record here presented, could not have been prejudiced by the giving of the same.

Upon the question as to the safety of the machinery as to whether or not defendant had notice of its defective condition, and as to whether or not plaintiff understood and appreciated the danger incident to its use, the evidence is in sharp conflict. All these questions, however, were for the determination of the jury, and since they determined these issues in favor of plaintiff, it is not within the province of this court to disturb the judgment based upon such determination.

The record discloses no prejudicial error, and the judgment and order appealed from are affirmed.

Allen, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 14, 1913.