[Civ. No. 11726. First Dist., Div. Two. Sept. 30, 1941.]

JESSIE B. CARLSTON, Respondent, v. FRANCES SHENSON, as Executrix, etc., Appellant.

James M. Thomas and Gus C. Ringole for Appellant.

Young, Hudson & Rabinowitz and Roscoe D. Jones for Respondent.

DOOLING, J. *pro tem.*—Defendant, executrix of the last will of Gustave Weissbaum, deceased, appeals from a judgment for $67,346.84. The action was tried before a jury and represented a balance of principal and accumulated interest found to be due upon two promissory notes, executed and delivered to Anglo and London Paris National Bank as payee by G. Weissbaum & Co., a copartnership, in which decedent Weissbaum was one of the partners. One note was for $35,575.15 dated June 30, 1919, and the other for $70,000, dated August 31, 1920. The notes were purchased by Joseph F. Carlston, husband of the plaintiff, from the payee bank, and after Carlston's death they with another note were bought by plaintiff at a probate sale for $25.

The testimony showed that decedent Carlston was the president of the Central National Bank of Oakland, that at the time the notes were executed G. Weissbaum & Co. had already borrowed to the limit allowed from the bank of which Carlston was president, that Carlston was interested with G. Weissbaum & Co. in a proposed shipment of rails to the Orient and that in order to raise part of the money necessary in that transaction the two notes here in issue were executed and their payment guaranteed by Carlston.

The ship which had been chartered to transport the rails to the Orient failed to carry out its contract and a libel in admiralty was filed against the Robert Dollar Co. for this breach. To secure its indebtedness to the Central National

Bank of Oakland, G. Weissbaum & Co. assigned to that bank its claim against the Robert Dollar Co. and transferred to the bank its business, giving the bank at the same time a promissory note for $75,000 with an agreement that upon the payment of this note the business would be retransferred to G. Weissbaum & Co. One W. F. Clark, who had theretofore been an accountant for G. Weissbaum & Co., was employed by Carlston to look out for his bank's interest in the Weissbaum & Co. business and continued in that capacity from December 31, 1921, to April, 1932.

Plaintiff admitted the following payments on the two notes in issue: $61,467.82 and two payments of $15,000 each and claimed a balance due of $14,107.33 on the principal of the two notes. The balance of the judgment is for accrued interest.

To show payment in full the defendant relies, among other things, upon evidence that in 1922 Clark with the knowledge and consent of Carlston wrote the two notes off of the books of G. Weissbaum & Co. and thereafter presented periodical financial statements to Carlston upon which the two notes did not appear as liabilities of G. Weissbaum & Co. and to which Carlston at no time made any objection; that in 1928 a settlement was made with Robert Dollar Co. from which the Central National Bank of Oakland received a balance after deducting all expenses of litigation which with other cashiers' checks brought the total in the bank to the credit of G. Weissbaum & Co. to $283,565.35. That of this amount $61,467.82 was paid to Carlston. The deposition of Raymond Benjamin that he collected $55,618.82 for Weissbaum from the United States government in 1932 on a contract to wreck Camp Kearny; that Carlston had previously informed Benjamin that he personally held an assignment from Weissbaum of this claim and that at the direction of Weissbaum and Carlston he paid this sum of $55,618.82 to the Central Nattional Bank of Oakland; and the testimony of Clark that in April, 1932, after this payment Carlston informed Clark that "they had no further interest in Weissbaum." From these facts the jury could have found that the notes in suit had been fully paid.

■ Appellant attempted to introduce into evidence certain records of the bankruptcy court to show that Weiss-

baum in proceedings to obtain a composition with his creditors had omitted these notes in his schedule of liabilities. An objection that this was hearsay and self-serving was sustained. Appellant argues that this was error and cites *Simonton* v. *Los Angeles T. & S. Bank,* 205 Cal. 252 [270 Pac. 672]. The case is not in point. In that case a widow had omitted certain property from the inventory in her husband's estate, which after the estate was distributed it was claimed should have been included as community property. The very fact in issue was whether this was a part of the husband's estate and should have been inventoried and the court said:

"To have fraudulently omitted the property would have been a crime. The law presumes a person is innocent thereof, which presumption is applicable to civil and criminal cases alike. Where, therefore, in a civil action a question arises the determination of which involves the establishment of a fact that a party has been guilty of fraud or criminal act, the other party, in order to obtain a determination of such question in his favor, must overcome, by at least a fair balance of evidence . . . the legal presumption of innocence which exists in every case."

The language quoted above distinguishes the Simonton case from this. In that case a question arose, i. e., whether the property should have been inventoried in the estate, the determination of which involved the establishment of the fact that a party had been guilty of fraud or a criminal act. In this case the schedule of debts in the bankruptcy proceeding was not an issue in the case. It was entirely collateral, independent and disconnected from any issue in the case. It has never been the law that a self-serving sworn declaration of a party in a collateral and independent matter may be introduced as proving or tending to prove the truth of such statement. The objection was properly sustained. The same rule is equally applicable to the omission of these notes as liabilities from a partnership return made to the federal government for income tax purposes.

Gustave Weissbaum in his lifetime had executed a series of waivers of the right to plead the statute of limitations to each of these notes of which the following is typical:

"In consideration of the forbearance of the holder of the within note dated June 30, 1919, in the original sum of $35,575.15, payable to the Anglo & London Paris National Bank of San Francisco, California, to sue thereon during a period of six months from the date hereof, this day promised by the holder, at our request, we hereby agree to waive all statutes of limitation and all right to plead the same, in any action hereafter brought within four years from the date hereof by the holder of the within note or obligation, or by his or its assigns.

"Dated: This 21 day of May, 1934.

"G. WEISSBAUM AND CO.

"By G. WEISSBAUM."

These waivers were relied upon to toll the statute of limitations. The last of them were signed after Joseph Carlston's death in the office of Mr. Roscoe D. Jones, attorney for the plaintiff herein.

The witness Wells, who was a business associate of Weissbaum, testified that in May, 1934, he went with Weissbaum to Mr. Jones' office and was present when the waivers were signed. That at that time Weissbaum told Jones "about obtaining a judgment for over $300,000 against the Robert Dollar Company, and said 'We collected it, but the Central National Bank of Oakland took all the money, but I never got my notes back.' Mr. Jones made no comment. Weissbaum further told Mr. Jones about getting a judgment against the United States Government, amounting to $60,-000.00 . . . and remarked that Mr. Carlston got the money. Mr. Weissbaum further said, 'I had a settlement with Mr. Carlston . . . and Mr. Carlston gave me my business back, but I didn't get my notes back.' "

At the time of defendant's opening statement to the jury the following occurred:

"The Court: These waivers are just what I thought they were. They are signed 'G. Weissbaum & Co., by G. Weissbaum,' the one I have in my hand—

"Mr. Ringole: But there is no admission that he owes any money in those waivers.

"The Court: Why should a man extend a note from time to time that it is now claimed he did not owe? . . .

"The Court: Why should a man ask for an extension of an obligation? If he was alive he would say he did not owe it at all. . . .

"Mr. Ringole: As a matter of law I am going to ask that your honor strike from the record the remarks with reference to the implications flowing from the waivers, as not a statement of the law. . . .

"The Court: It simply occurred to me, I think I am right; as you say it is a question of law and the jury will be instructed to disregard the statement I made. It is a matter that does not concern them and by reason of my having made it they are not to infer or get any wrong impressions."

Thereafter counsel for defendant made a motion for mistrial on the ground, among others, of these statements of the court. In denying the motion the court said:

"Now, if there are any other matters which require corrections or instructions, counsel for defendants is at liberty to submit any instructions that he thinks necessary to be given to the jury at the conclusion of the trial that will cover the various situations that he has mentioned and if the instructions are in my opinion proper, I will give them to the jury."

The defendant requested the following instruction on this subject which the court refused to give:

"You are further instructed that if you find from the evidence that when Gustave Weissbaum signed the waivers of the statute of limitations with respect to said notes sued upon in this action, on May 21, 1934, said Weissbaum then stated to Mr. Jones, one of the attorneys for the plaintiff in this case, that he would sign said waivers of the statute of limitations, but that he did not owe any money on said notes; that the said notes had been paid from the collections made by Central National Bank and Carlston from the Robert Dollar Company and Camp Kearny; that his business had been returned to him, and that the notes should have been returned to him, you have the right to consider said statement made in arriving at your verdict."

The failure to give this instruction was error. It is said in Wood on Limitations, 3d Ed., sec. 76:

"While a promise not to plead the statute, whether made before or after the debt is barred, does not amount to an acknowledgment thereof or a promise to pay it, yet, if made

before the debt is barred, and consideration of forbearance to sue, and the creditor does forbear to sue upon the faith of the promise, it is binding upon the debtor, and at least has the effect to keep'the debt on foot until the statutory period, dating from such promise, expires, either by way of estoppel, or as a conditional promise to pay the debt in case the plaintiff proves it. . . . Usually, perhaps, where there is a promise not to plead the statute, there will be found in the context something further which will amount to an acknowledgment of indebtedness from which a promise to pay may be implied; but in the absence of such context it seems on the authority of the cases cited, and upon a strict application of the present theory of the doctrine of acknowledgment, that a promise not to take advantage of the statute will have no efficacy in itself as an acknowledgment of a debt.''

Even in the case of the renewal of a note, which ordinarily might be taken as an admission of the debt, the court held in *Newark Trust Co.* v. *Kriebel,* 49 Cal. App. 614 [193 Pac. 962], that all defenses could be reserved to the indebtedness and ''the question of the intent of the parties in such case is one of fact to be determined by the jury from all the evidence relating to the transaction.''

█ Counsel for respondent do not question these rules of law, but argue that the waivers were relied on by them solely to toll the statute and not in any respect as admissions of the debt. The jury, however, was not so informed. The waivers were before them and they were not instructed at all on the subject of their weight or effect as evidence. The defendant was entitled to have the jury instructed on the rules of law applicable to this particular type of evidence and we may not assume that they did not give to it the same effect that the trial judge had stated that he thought it should bear, i. e., that it was or constituted an admission of liability.

█ The trial court's statements, even though withdrawn from the jury, only aggravated the error in refusing to instruct on the subject. It is a truism, so often repeated as to need no citation of authority, that no amount of admonition to a jury will completely wipe from their minds positive statements of a trial judge. The effect of what occurred was to impress the jury that the judge drew a certain inference from the evidence. They were in effect told to disregard

the judge's inference, but they were not told, as they should have been, that they were not at liberty to draw the same inference independently if they saw fit.

■ The court gave the following instructions:

"Every witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which a witness testifies, by the character of the witness' testimony, or his or her motive, or by contradictory evidence.

"There are a lot of instructions along these lines, ladies and gentlemen, but I don't care about giving them to you because I don't think I am committing any error when I express my opinion that all of the witnesses who have appeared in this case have given the best recollection, truthfully and honestly, as to what occurred, these many years ago. It is for you to determine whether or not their recollection is good or bad as to the incidents to which they testified. Therefore I am not even going to give you the customary instruction as to the falsity or possible falsity of any witness' testimony, because there was no intentional falsity indicated by the testimony of any of the witnesses in the case."

By these instructions the court clearly withdrew from the jury the consideration of every test of credibility of the witnesses except the single test of the strength or weakness of their recollections. It is error to single out a particular test of credibility and exclude all others from consideration. (*Fries* v. *American Lead Pencil Co.*, 141 Cal. 610, 612 [75 Pac. 164].)

■ On the direct examination of plaintiff the following occurred:

"Mr. Hudson: Q. What is your occupation?

"A. Stenographer.

"Q. Are you employed in San Francisco?

"A. Yes.

"Q. Dependent upon your employment for your support?

"A. Entirely.

"Mr. Ringole: I am surprised at Mr. Hudson injecting that into the case. It is incompetent, irrelevant and immaterial.

"Mr. Hudson: I asked the lady if she was dependent on this employment for her support.

"The Court: I will sustain the objection.

"Mr. Ringole: I am sorry that this has come up.

"The Court: I will ask the jury to disregard it. You can see I am looking after your interests in this regard.

"Mr. Ringole: I don't like that attitude.

"The Court: I was about to instruct the jury to disregard the implication that might follow from the question being asked."

The question should not have been asked nor the answer given. (*Ensign* v. *Southern Pacific Co.*, 193 Cal. 311, 322 [223 Pac. 953].) It is true that the court promptly instructed the jury to disregard them, but counsel after objection aggravated the effect by restating his question. Standing alone, in view of the prompt admonition to the jury, this misconduct might not call for a reversal, although where the misconduct is deliberate, as it obviously was here, courts have reversed in spite of a timely admonition. (*Citti* v. *Bava*, 204 Cal. 136 [266 Pac. 954]; *Squires* v. *Riffe*, 211 Cal. 370 [295 Pac. 517].) In any event, taken with the other errors hereinabove discussed, we are satisfied that appellant was denied a fair trial and we cannot say on the record that the errors were not prejudicial.

The judgment appealed from is reversed.

Sturtevant, J., and Nourse, P. J., concurred.