[Civ. No. 11830.   First Dist., Div. One.   July 30, 1942.]

HAROLD FREMONT BICKFORD, an Incompetent Person, etc., Appellant, v. ROY KENT MAUSER, a Minor, etc., et al., Respondents.

Keyes & Erskine and J. Benton Tulley for Appellant.

Francis W. Murphy for Respondents.

KNIGHT, J.—Plaintiff appeals from a judgment in favor of defendants based on the verdict of a jury in an action to recover damages for injuries sustained in an automobile collision between a Plymouth coupe driven by plaintiff, Harold Fremont Bickford, 23 years old, and a Pontiac sedan driven by the defendant Roy Kent Mauser, 18 years old, whose father was joined as a party defendant pursuant to the provisions of the California Vehicle Code.

The pleadings raised the issues of the negligent operation of both cars, but at the commencement of the trial counsel for defendants, in his opening statement to the jury, admitted

that the Mauser car had been negligently operated, and took the position that the collision was brought about by the negligence of both drivers. Thus as to the question of liability the cause was submitted to the jury on the single issue of the contributory negligence of the plaintiff; and after hearing the evidence the jury returned a verdict in favor of defendants. The evidence clearly supports the conclusion reached by the jury; and plaintiff makes no contention to the contrary; but as grounds of appeal plaintiff urges that the trial court committed prejudicial error in ruling on the admissibility of evidence, that it over-emphasized the question of contributory negligence by giving repeated instructions, and that counsel for defendants was guilty of misconduct.

The important facts of the case necessary to be considered in the determination of the foregoing points may be stated as follows: The accident occurred shortly before 2 a. m. September 12, 1940, at the intersection of Sixth and Bryant Streets in San Francisco. Plaintiff was driving south on Sixth Street, and Mauser east on Bryant. The night was clear and dry, and the intersection well lighted by a street light on each of the four corners. Automatic signals were installed at the intersection, but at that hour of the night they were not operating. A service station occupied the northwest corner of the intersection, and other than the pumps and the little glass building itself, there were no obstructions which would obscure the view of a driver travelling south on Sixth Street or a driver travelling east on Bryant Street from each other for a considerable distance. It was demonstrated that a person driving south on Sixth Street, when 123 feet north of the center of the intersection, had a clear and practically uninterrupted view of a car approaching from the right on Bryant Street continuously from the time the car on Bryant Street reached a point 187 feet west of the center of the intersection. Both cars were equipped with good brakes and were otherwise in good condition, except the plaintiff's car had a "shimmy" in the front wheels when driven much over 35 miles an hour. The evidence shows that at the time of the collision the estimated speed of the Mauser car was 35 or 40 miles an hour, and that the speed of plaintiff's car was about the same. After the collision the Pontiac swung around and stopped when the rear end struck and damaged the automatic signal on the southeast corner; the Plymouth, driven by plaintiff, jumped the southeast curb, struck and broke

off a fire hydrant, and came to rest against a building on Bryant Street some 80 feet east of Sixth Street.

Mauser was accompanied by three boy companions about his age. All four resided in Seaside, Oregon, and were students at Oregon State College. They arrived in San Francisco two days before to visit the fair, and were staying across the bay in Albany. The car they were using belonged to the father of one of the boys, named Jackson. On the night of the accident the boys went to a dance at the fair, after which they drove their girl companions to their respective homes in San Francisco, and then started to go back to Albany. After they had taken the girls home young Jackson asked Mauser to drive; and Jackson and a boy named Berg took the back seat. In the front seat with Mauser was the other boy, named Hampton. The boys had directions as to how to get back, but missed the street leading to the bay bridge, and drove out the Bayshore Highway a ways, then stopped at a lunch room and inquired of a police officer how to get back. Upon reaching Bryant Street they saw the signs to the bridge, and proceeded easterly on that street for about four blocks when the collision occurred. None of the boys in the Pontiac was seriously injured. Plaintiff had been a student at the University of California up to a short time before the accident, when he was called into active service in the National Guard. At the time of the accident he was accompanied by a young lady who was killed as a result of the collision; and plaintiff suffered severe brain injuries, which have rendered him incompetent, and he has no recollection whatever of the accident or of the circumstances of his being in San Francisco that night. The evidence affirmatively shows that none of the occupants of either car had been drinking. Police officers, attached to the Accident Prevention Bureau, arrived at the scene of the accident soon after it happened. One of the first to arrive was Officer Murray, who interrogated the four boys concerning the accident; and admittedly the two boys who were riding in the back seat were half asleep at the time of the collision and had no knowledge as to how it happened. Officer Badagliacco arrived soon after the other officers, and all four boys were taken by him to the Hall of Justice. There a written statement was obtained from Mauser, whereupon he was detained in custody and the other three released.

The testimony relating to the actual happening of the acci-

dent was given by Mauser and Hampton, the occupants of the front seat; and their versions were substantially the same. Hampton testified that when they finally reached Bryant Street, after first losing their way, they travelled along the eastbound street car track of Bryant Street (the inner lane) at 35 or 40 miles an hour; that he saw the other car involved in the accident "a split second" before the collision occurred; that it was going at about the same speed as the car in which he was riding, but he did not know exactly how far back of the north property line of Bryant Street it was when he first saw it, but placed it approximately 10 feet north, and the car in which he was riding was then about 10 feet west of the property line of Sixth Street. He also testified that as soon as the police arrived they took Mauser into custody, and afterwards took all four boys to the Accident Prevention Bureau; that there the police questioned Mauser but did not ask him, Hampton, any questions and said nothing to him at all.

As part of defendants' surrebuttal evidence there was received, over the objection of plaintiff, a written statement made by Hampton the day after the accident to an investigator for defendants' counsel. The document was offered in evidence in rehabilitation of Hampton's testimony given at the trial, and plaintiff contends that the admission thereof calls for a reversal of the judgment. We cannot agree with this contention. The following were the circumstances leading up to the admission of the document: On cross-examination of Hampton there was an evident attempt made to show that the story then being told by him at the trial as to the circumstances of the accident was a pure fabrication. To this end he was asked if at the scene of the accident he did not tell the police that he "had been resting in the car" and "had not seen the accident," and consequently "could not tell them how it had happened." He positively denied having made such statement, or having stated "anything like that." He denied also having made any such statement later at the police headquarters. In this regard he stated that Mauser was there interrogated about the accident but that he, Hampton, was asked no questions at all. Also in furtherance of the attempt to show that his story was fabricated, it was brought out that he and Mauser were close friends; that they were schoolmates in college; that they had come to San Francisco prior to the trial, visited the scene of the accident with

Mauser's counsel, discussed the facts with him, went over a diagram of the place in question, and that Hampton knew that Mauser had been taken into custody by the police as soon as they arrived. Furthermore, in attacking the truth of Hampton's entire story, plaintiff called as rebuttal witnesses the two police officers, Badagliacco and Murray. The former testified that all three of the boys who were riding with Mauser told him "the same thing,"—that they were resting and did not see the accident. And Murray testified that at the scene of the accident and also at police headquarters Hampton stated he was resting and did not see the accident. The trial took place six months after the accident, and both officers admitted that they had made no notes of the conversations with Hampton, that no record was made thereof in the police department, and that they were testifying from mere recollection. They also admitted that since the accident they had investigated many others (estimated by Murray to be 360) and interviewed hundreds of persons concerning them (estimated by Murray to be at least 1,000); but each officer stated that his recollection was quite clear as to this particular conversation with Hampton concerning this particular accident.

On account of the attack thus made by plaintiff upon the truth of Hampton's entire story, defendants, in surrebuttal and for the purpose of rehabilitating his testimony, offered in evidence and the court admitted over plaintiff's objection the written statement made by Hampton the day after the accident to an investigator for defendants' counsel. For the same purpose the court admitted over objection oral conversations had between Hampton and the Mausers, but plaintiff's attack is directed mainly against the written statement. It was written by the investigator and signed by Hampton, and starts out by giving a brief resume of their trip from Oregon to California. He then recites what transpired on the night of the accident prior to the happening thereof; and continuing he goes on to say that he had ridden with Mauser many times and always found him to be a careful driver, that never at any time had he had occasion to warn him about his driving; that on the night of the accident Mauser was not driving at a high rate of speed—not in excess of 40 miles an hour; and as to the circumstances of the happening of the accident the statement reads: "When the front of our car was just about on or near the west curb line of Sixth Street I saw

a car travelling south on Sixth Street. This southbound car was about ten feet north of the north intersecting line of Bryant. This southbound car was travelling about forty to forty-five miles per hour, possibly faster. When I saw car No. 2 I yelled, and then the two cars collided near the center of the intersection.'' He then related what happened to the cars after the collision, as set forth above.

The law governing the admissibility of evidence of this character is well stated in the case of *Davis* v. *Tanner*, 88 Cal. App. 67 [262 Pac. 1106], wherein the court says: ''It is now a well-settled rule in California and in most of the states of this nation that evidence of prior statements consistent with, or corresponding testimony given at a former hearing, are incompetent to rehabilitate the testimony of a witness given at the trial, merely because an effort has been made to impeach her general reputation, or because evidence has been adduced of former statements inconsistent with her present testimony. [Citing cases.] But there is an equally uniform exception to this rule recognized by all the authorities to the effect that, where the witness is charged with changing or coloring his testimony from ulterior motives or that his evidence is a fabrication of recent date, his previous statements corresponding to the testimony given at the trial are competent, particularly if they are made prior to the impeaching statement for the purpose of rehabilitating his evidence and refuting the inference of recent fabrication, or that the testimony was given as a result of improper influence or because of undue interest. [Citing cases.] . . . It is not necessary that the party seeking to impeach the witness shall expressly state that his evidence is offered to prove a fabrication of recent date, nor to charge that the recent evidence was given under improper inducements in order to authorize the admission of corresponding statements made upon a prior occasion. It is sufficient if the evident purpose of the impeaching party, as disclosed by the record, indicates this to have been his purpose. . . . 'In order to come within the above exception to the rule, it is not necessary . . . that there be a direct charge of fabrication.' ''

It is quite obvious from an examination of the record in the present case that the evident purpose of the above cross-examination of Hampton was to show that immediately after the accident he had made statements to the police officers that he had not seen the other car involved in the accident prior

thereto because he had been resting; but that after he talked with defendants' counsel and visited the scene of the accident he changed his story and testified that he was not asleep and that he had seen the other car before the collision. That counsel for plaintiff was in effect seeking to show that the witness was fabricating his testimony is borne out by counsel's later remark that "My position is that his testimony is not true." Plaintiff argues, however, that to warrant the application of the exception there must be a charge of *recent* fabrication, or the statement must have been made by the witness at a time when he had no motive to fabricate; and that here there was no charge of recent fabrication; that the evidence shows that the witness had an even stronger motive to fabricate at the time he made the statement to the investigator than he did in giving his testimony at the trial—that at the time he made the statement to the investigator, his friend Mauser was under arrest on criminal charges growing out of the accident, whereas at the time of trial these charges had been dismissed. However, it is apparent that the charge of fabrication was based on the testimony given at the trial, and as held in *People* v. *Kynette,* 15 Cal. (2d) 731, 753-754 [104 P. (2d) 794] : "When a witness has been charged with improper motives of interest, or improper influences, or with recent fabrication, the law allows hearsay statements to be introduced for the purpose of showing that the same and consistent statements had been made *at a time prior to the alleged fabrication OR prior to the time the motive of interest existed.*" (Italics added.) Applying the foregoing rules to the present situation it would seem clear that defendants were entitled to rehabilitate the testimony given by Hampton at the trial.

Appellant argues that in any event the entire statement should not have been admitted. In this regard plaintiff objects to those portions wherein Hampton stated that Mauser was a careful driver; that he was driving carefully and not at a "high rate of speed"; that the impact occurred near the center of the intersection; and that he had yelled when he saw the other car. Plaintiff contends that there was no such testimony given at the trial by Hampton, and therefore those portions of the statement had nothing to do with the rehabilitation of his testimony. If the cause had been submitted to the jury on the contested issue of whether on this occasion Mauser was driving in a negligent manner, there would be much force in plaintiff's objection to those portions of the statement

that he was a careful driver. But as pointed out, that issue was eliminated by the concession of counsel for defendants at the opening of the trial that the Mauser car was being negligently operated. The other extraneous portions of the statement to which objection has been made related either to irrelevant matters which could in no way operate to plaintiff's prejudice, or to circumstances concerning which Hampton's testimony was confirmatory. In such situation it would appear that no prejudice resulted from allowing in evidence the entire statement.

█ Plaintiff complains also of the trial court's ruling allowing Mauser to testify that on account of being a stranger in San Francisco and not knowing where he was, and not being aware of the vehicle laws of this state, he did not know he was driving in town and did not know the speed limit. But in view of the admission by counsel for defendants at the opening of the trial that Mauser was negligent in driving his car, it cannot be said that the jury could have been led to believe, by the admission of the above evidence, that Mauser was not guilty of negligence.

█ Nor is there any merit in plaintiff's contention that the court erred in giving the instructions. It is not claimed that the form or substance of the instructions which plaintiff claims were "over-emphasized" did not correctly state the law; and that being so, the mere repetition or similarity of expression used in the several instructions does not serve as ground for reversal. (*Wagy* v. *Brave,* 133 Cal. App. 413 [24 P. (2d) 209]; *Barckdall* v. *Simons Brick Co.,* 21 Cal. App. 685 [132 Pac. 846].) In *Muskin* v. *Gerun,* 46 Cal. App. (2d) 404 [116 P. (2d) 105], relied on by plaintiff, the reversal was based upon the refusal to give certain instructions which were proper, rather than the over-emphasis of those given.

█ Plaintiff's final contention is that defendants' counsel was guilty of prejudicial misconduct in asking Mauser if it were not the fact that the criminal charges placed against him were dismissed and he was never brought to trial, and that the court erred in failing to instruct the jury to disregard the statement. It appears, however, that repeatedly throughout the trial counsel for plaintiff referred to the fact that Mauser had been taken into custody because of the death of plaintiff's companion, and that finally the trial court found it necessary to admonish counsel for persisting in pressing the point; therefore on recross-examination defendants' counsel asked

Mauser if those charges had been dropped. An objection to the question was sustained; and contrary to plaintiff's assertion, the transcript shows that no request was made that the jury be instructed to disregard the question. In this state of the record no error appears. In *Carlston* v. *Shenson*, 47 Cal. App. (2d) 52 [117 P. (2d) 408], cited by appellant, the attorney persisted in asking the objectionable question in different forms after a ruling against its admissibility.

The judgment is affirmed.

Ward, J., concurred.

PETERS, P. J.—I dissent.

As pointed out in the majority opinion, the defendants admitted that defendant Roy Kent Mauser was negligent, and that such negligence proximately contributed to the accident. The sole issue was whether plaintiff was guilty of contributory negligence. On that issue the plaintiff concedes the evidence was conflicting, and concedes that there is evidence to support the implied finding of the jury that he was guilty of contributory negligence. But the issue was a close one. A contrary finding likewise would have been supported. Moreover, it must be remembered that, as a result of the accident, plaintiff's companion was killed, and plaintiff suffered a severe brain injury and had no memory of the collision. There were no eyewitnesses to the accident capable of testifying except defendant Roy Kent Mauser and his companion and close friend Hampton. Under such circumstances, any substantial error in the admission of the evidence of either of these witnesses could not help but be prejudicial.

In my opinion, it was error of a most serious and prejudicial nature to have admitted the hearsay, self-serving statement made by Hampton to the investigator of defendants, under the guise of rehabilitation. Hampton, called as a witness for defendants, testified that he saw the accident, and testified to facts which, if believed, showed plaintiff was guilty of contributory negligence. On cross-examination an attempt was made to impeach him by asking him if, at the scene of the accident and at the police station, he had not told the investigating police officers that he had not seen the accident. He denied making such statements. Officers Badagliacco and Murray were then called, and they testified that Hampton had told them at the scene of the accident and at the police

station that at the time of the collision (about 2 a. m.) he was resting and did not see the accident. There was no charge made of recent fabrication, or that Hampton had been induced to change his testimony because of any improper inducement of defendants. All that plaintiff attempted to and did do, was to impeach the witness by the usual method of showing prior inconsistent statements. It was simply a situation that develops in every case where a witness has made prior inconsistent statements. The charge that the testimony given by Hampton on the trial was "false" cannot be distorted into a charge of recent fabrication within the meaning of that limited exception to the general rule. That charge is expressly or impliedly made in every case of impeachment.

It must not be forgotten that the usual and general rule is that a witness cannot be rehabilitated by the introduction of prior consistent statements. It is well settled, in this and other states, that, when a witness has been impeached, the opposing party cannot rehabilitate that witness by showing that at other and different times the witness made statements out of court and out of the presence of the other party in harmony with his present testimony. (See cases collected 27 Cal. Jur., p. 178, § 153.) To that rule there is limited exception. That exception is that where the witness is charged with testifying under the influence of some motive prompting him to make a false statement, or that his evidence is a fabrication of recent date, such rehabilitating evidence is admissible. The exception is well illustrated by the two cases relied upon in the majority opinion. In *Davis* v. *Tanner,* 88 Cal. App. 67 [262 Pac. 1106], a witness was impeached by the introduction of a prior inconsistent statement. Prior consistent statements were allowed to be introduced to rehabilitate her. The theory upon which this was held proper is clearly stated at p. 75 as follows: "It is apparent from the record that appellants offered the former statement of the witness Hogg to impeach her on the theory that she had fabricated or colored her testimony given at the trial *through the urgent inducement of respondent's attorneys,* with whom a recent conference was developed by appellants, with the manifest inference that this interview was the cause of whatever conflict exists between her testimony at the trial and her former statement made to appellants." (Italics added.) In *People* v. *Kynette,* 15 Cal. (2d) 731 [104 P. (2d) 794], rehabilitating evidence was admitted because an attempt had been made to show that the district

attorney's office had brought improper influences to bear upon the witness. In the instant case there was no express or implied charge that defendants or their counsel had brought improper pressure to bear on Hampton. They simply charged that he had told the police officers he did not see the accident, and that he was friendly with one of the defendants. Certainly, it cannot be contended, because a witness is impeached by showing friendship with one of the parties, that the door is thrown open to the introduction of hearsay, self-serving prior consistent declarations in violation of the general rule above discussed. If the credibility of a witness can be propped up in this fashion the limited exception to the general rule would soon abolish that rule.

For these reasons I believe the judgment should be reversed.

Appellant's petition for a hearing by the Supreme Court was denied September 24, 1942. Carter, J., and Traynor, J., voted for a hearing.