Louise L. COBIN, Appellant,

v.

MIDLAND MUTUAL LIFE INSURANCE COMPANY, a corporation, Appellee.

No. 15629.

United States Court of Appeals Ninth Circuit.

Oct. 13, 1958.

Leonard Horwin, Hortense Stahl, Erich Auerbach, Beverly Hills, Cal., for appellant.

Adams, Duque & Hazeltine, James S. Cline, Henry Duque, Los Angeles, Cal., for appellee.

Before BARNES and HAMLEY, Circuit Judges, and CLARK, District Judge.

HAMLEY, Circuit Judge.

Louise L. Cobin brought this action to recover, as beneficiary, the face amount of a policy of insurance issued on the life of her deceased husband, Leo Cobin. Jurisdiction was based on diversity of citizenship. The insurer and defendant, Midland Mutual Life Insurance Company, denied liability.

Trial was had without a jury, and judgment was entered for defendant.

Plaintiff appeals, challenging certain findings of fact and conclusions of law. Plaintiff also contends, on appeal, that errors were committed in receiving certain evidence, in requiring that a specified allegation be included in the amended complaint, and in denying a motion to strike certain of defendant's proposed interrogatories.

The case which appellant sought to prove may be stated as follows: On December 14, 1953, Leo Cobin applied for a policy of insurance upon his life, for the benefit of his wife, in the sum of $25,000, paying the first monthly premium in the sum of sixty-six dollars. Accepting this offer, the company, on February 11, 1954, executed and issued the policy as applied for, and delivered it to Cobin about the middle of February, 1954. After the policy had been delivered to him, Cobin gave it to the agent of the insurance company for the purpose of ascertaining whether the company would increase the amount of the policy, as of its original date of issue, from $25,000 to $50,000. Cobin died on March 5, 1954, while the company had possession of the policy for this purpose. Mrs. Cobin, as named beneficiary under the policy, gave timely written notice and proof of Cobin's death. The company, however, refused to deliver the policy to Mrs. Cobin, and denied liability thereunder.

Appellee had this entirely different version of the transaction: The application made by Cobin was for a policy to be issued at a standard premium rating. The policy issued by the company on February 11, 1954, however, carried a "Special Class A" premium rating, which is a substandard rating. Issuance of this policy, therefore, did not constitute an acceptance of Cobin's offer, but was a counteroffer. The company sought to obtain Cobin's acceptance of the counteroffer, but he declined to do so and returned the policy to the company. No contract of insurance came into existence, and the policy, which was in the company's possession at the time of Cobin's death, was never in force and effect. The company has offered, and continues to offer a return of the premium deposit Cobin made at the time he applied for insurance.

The trial court, in its findings of fact, adopted that view of the evidence contended for by appellee. It was concluded therefrom that no contract of insurance came into existence.

The key finding of fact, and the one against which appellant directs her principal attack, is the finding that Cobin applied for a policy "to be issued at standard premium rates." Unless appellant is correct in arguing that this finding is clearly erroneous, it inescapably follows that issuance of a policy at a different premium rating did not constitute an acceptance of Cobin's offer, but was a counteroffer which could not ripen into a contract unless accepted by Cobin.

There is considerable documentary evidence and testimony from appellee's own witnesses tending to indicate that the insurance agent with whom Cobin dealt thought that only a substandard rating could be obtained. In addition, the check which Cobin gave the agent at the time Cobin and his wife applied for their policies was more than enough to cover a monthly premium on Mrs. Cobin's policy at a standard rating, and a monthly premium on Mr. Cobin's policy at the "Special Class A" rating at which his policy was later issued.

The Cobin application itself, however, contains no express request for a substandard rating. A witness for appellee testified that, if the application had been for a substandard rating, such a request should have been included in the application. The agent who took Cobin's application testified that all applications are at standard ratings, as agents are not supposed to do underwriting.

But there is more than this to be said for the challenged finding, or at least for the resulting conclusion of law that no insurance contract came into existence. If the parties had intended that issuance of a policy at a "Special Class A" rating would give rise to an insur-

ance contract, they would not have acted as they subsequently did.

■ The court found that Cobin refused to accept the policy and returned it to the company for cancellation. This finding is supported by substantial evidence. The evidence providing this support is to the effect that both parties treated the application as a preliminary negotiation and the issuance and tender of the policy as an offer. Both the company and Cobin acted on the assumption that the policy would not become effective unless and until the issued policy was affirmatively "accepted" by Cobin.

Proceeding on this assumption, the insurance agent tried to "place" the policy with Cobin, tried to dissuade Cobin when the latter said he would not accept the policy, and when unsuccessful in this, took the policy back to his office and told the cashier to return it to the home office as an "untaken policy." The policy was stamped "Not Taken" at the home office on March 3, 1954.

Proceeding on the same assumption, Cobin exercised what he believed to be his right not to accept the policy which had been issued. He handed the policy back to the agent, and asked for the return of his check covering the entire premium deposit. Had the policy then been in effect, he would have been entitled, at most, to the return of unearned premium.

The uncertainty, or at least the lack of express advance agreement, as to premium rating offers the most apparent explanation for the course adopted by the company. The theory under which Cobin supposed that he had the right to accept or reject the issued policy is not apparent in the record. Actually, however, it seems immaterial what the reason or reasons were for the course the parties adopted. No contention was made that Cobin acted under a misapprehension of law, or that any overreaching or fraud was involved. That being the case, the mutual agreement or acquiescence of the parties to treat the issuance of the policies as an offer, thus affording Cobin an opportunity to ac-

cept or reject the policy, ought to be respected by the court.

For the reasons indicated, we hold that the questioned finding of fact is not clearly erroneous. It necessarily follows that the finding of fact that the policy was not issued as applied for must be sustained. It has already been noted that the finding of fact to the effect that Cobin refused to accept the policy is supported by substantial evidence. The remaining findings of fact which are challenged are of a collateral nature, but, in any event, we hold that they are not clearly erroneous. Based upon the findings of fact which were entered, the trial court correctly concluded that no contract of insurance came into existence.

■■ Appellant contends that in the course of the trial the parol evidence rule was frequently violated. Several instances are cited wherein evidence relative to the negotiations between the parties prior to issuance of the policy was received over appellant's objection.

Under appellee's theory of the case, no contract of insurance came into existence, the issued policy being no more than a counteroffer which was never accepted. The parol evidence was not offered to vary the terms of a written agreement, but to prove that the parties had not entered into any written agreement. This is not violative of the parol evidence rule. See West's Ann.Cal.Code Civ.Proc. § 1856, subd. 2; Boies v. Wylie, 113 Cal.App.2d 243, 248 P.2d 76.

■■ Appellant argues that the trial court erroneously permitted the general agent of another insurance company to testify to conversations he had with business associates and officials of his company with regard to a policy Cobin had with that company. It is contended that this testimony was "hearsay as to appellant and * * * irrelevant and incompetent to any issue here involved."

When these questions were asked and answered, appellant objected on the ground that the questions were irrelevant and called for a conclusion on the

part of the witness, and that the testimony elicited was incompetent. In our view, these objections are without merit. Appellant did not object on the ground that the questions called for hearsay, and therefore may not advance that objection at this time.

■ Appellant contends that a letter dated February 22, 1954, written by appellee's general agent at Beverly Hills, California, to the home office, constituted hearsay and was self-serving, and for these reasons should not have been admitted. In this letter, the general agent told the home office that the "policies were paid the company in error," requested a return of the premium paid on February 15, 1954, and indicated that an advance on the commission which the company had sent to the selling agent was being returned with the letter.

In Bloom v. Pacific Mutual Life Ins. Co., 85 Cal.App. 419, 259 P. 496, it was held that, in a jury trial, the court did not err in refusing to admit in evidence certain letters which passed between an insurance company and its agent. It was held that communications of this kind do not constitute evidence against a third party, though they may be admissible as admissions against interest.

The witness who identified the letter here in question was the man who wrote it. He had just testified that he had returned the policies to the home office on February 22, 1954. The letter was offered for the purpose of confirming this testimony. Appellant has not questioned appellee's contention that the policies were returned to the company on or about that date. If it was error to receive this letter in evidence, it was not prejudicial.

■ Appellant argues that the general agent's testimony that the selling agent did not receive a commission on the policy issued to Mr. Cobin is "incompetent, irrelevant and immaterial, and a self-serving declaration. * * *"

At the time this testimony was received, appellant objected on the ground that it was incompetent, irrelevant, and immaterial, but not on the ground that it was a self-serving declaration. The evidence was not incompetent, irrelevant, and immaterial, but was received for the legitimate purpose of countering appellant's contention that the company treated the policies as in effect. See Bickford v. Mauser, 53 Cal.App.2d 680, 128 P.2d 79.

■ It is next urged by appellant that evidence relating to the customs, practices, and procedures of the insurance company was erroneously received in evidence. The evidence in question consisted of the depositions of two persons employed in appellee's home office in Columbus, Ohio. One purpose of the testimony was to explain the significance of the notation, "Not Taken March 3, 1954," which appears on the policies of Mr. and Mrs. Cobin. The testimony was also intended to explain the circumstances in connection with the mailing of a premium notice after Mr. Cobin's death, and the notation, "Lapsed, March 10, 1954," entered on appellee's home office policy card.

It is appellant's position that this evidence was improperly received because it constituted evidence of appellee's general business custom or usage, uncommunicated to Cobin, which could not be admitted to alter the obligations of a contract.

■ Proof of the customs and usages of a particular business is not admissible to oppose or alter a rule of law or to change the legal rights or liabilities of parties as fixed by law. Paez v. Mutual Indemnity Accident, Health & Life Insurance Co., 116 Cal.App. 654, 3 P.2d 69.

■ Here, however, the testimony was not elicited to establish the nature of appellee's business customs and practices as an end in itself. Instead, it was used to establish when and under what circumstances, and with what significance, particular company acts relative to the Cobin policies were performed. Evidence of the habit or custom of a business house of doing certain

acts in the transaction of its business is admissible to prove that such acts were done on a particular occasion and to explain the surrounding circumstances. Shearer v. Pacific Gas & Electric Co., 43 Cal.App.2d 306, 110 P.2d 690.

That part of this testimony which tended to explain the circumstances surrounding the sending of the premium notice was also admissible under the rule permitting one party to explain a prior act or declaration on which the other party relies. Appellant had, in her case in chief, introduced in evidence appellee's premium notice sent after Mr. Cobin's death. Appellee was entitled to counter this with an explanation. See West's Ann.Cal.Code Civ.Proc. § 1854; Brooks v. E. J. Willig Truck Transp. Co., 40 Cal.2d 669, 255 P.2d 802.

Appellant asserts that there were other errors with regard to the reception of evidence, the amendment of pleadings, and the form of proposed interrogatories. Each such contention has been examined and found to be without merit, or not prejudicial.

The judgment is affirmed.