[Crim No. 3549. First Dist., Div. One. May 20, 1959.]

THE PEOPLE, Respondent, v. JAMES E. BIAS, Appellant.

Edward J. Rice, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

BRAY, P. J.—Defendant was charged with three felony counts: (1) burglary; (2) violation of section 288a, Penal Code; (3) assault with a deadly weapon. A jury found him not guilty of count (3) but guilty of counts (1) and (2). From the judgment entered on the latter, defendant appeals.

QUESTIONS PRESENTED

1. Was the prosecutrix an accomplice as a matter of law?
2. Sufficiency of the evidence.
3. Alleged errors in instructions.
4. Admissibility of certain evidence.
5. Did defendant receive a fair trial?

EVIDENCE

Mary Ellen, 16 years of age, married and about five months pregnant, lived in apartment 25 of the Neptune Court Apartments in Alameda. Her husband was in San Diego on duty with the Navy. About 9:30 p.m. a friend, Laurie Baker, whom she had been visiting, drove her to her apartment. Laurie left about 9:45 p.m. Shortly thereafter Mary Ellen heard a knock at the door. She asked who it was and a voice said "Jim." She opened the door and saw defendant who asked if he could come in. Refusing him, she closed the door. About half an hour later, she heard another knock at the door. On opening she again saw defendant. She started to close the door, but defendant said, "Do you want to get this in your stomach?" Feeling a knife stick her, she backed up. Defendant entered the room and ordered her to "strip." She hesitated, asked him to leave, but he shook his head and kept waving the knife. She disrobed and at his order lay upon the bed. Defendant then went around to the other side of the double bed and lay down opposite her. She asked him to lay down the knife. He shook his head, forced her head down toward his penis and said "Blow it." Defendant then had an emission in her mouth. Mary Ellen got sick, went into the kitchen and vomited. She heard the door slam. She dressed, went to a neighbor's to stay for the evening. She merely told the neighbor that a man had broken into her apartment. The

next day she asked the landlady for another apartment because someone had tried to break in. The same day she informed the police, and identified defendant, also clothing belonging to him as similar to that worn by him at the time of the attack. Defendant had lived in apartment 32 for a period of approximately two and a half months some seven months previously.

Mrs. Hinderliter, who occupied apartment 32, testified that on the night in question, she was alone with her baby. About 10 o'clock someone who said he was "Jim" knocked on her door. Looking through the glass door she saw defendant with a gun in his hand. She then went out the back way to a neighbor's. Upon returning defendant was gone. She identified defendant at the police station as well as the clothing shown to Mary Ellen. This clothing had been obtained by the police the next day at defendant's apartment and was in a very wet condition. It was raining the night of the attack.

Defendant denied being at the Neptune apartments that night. He testified that about 5 p.m. he left his apartment and went to the DeLux Bar in Oakland where he stayed about two hours. He met a girl there who went with him to Jensen's Bar in Alameda. About two hours later they went to Al's Club. After a few minutes they went to Horgan's Bar, remaining there about two hours, when they went to his apartment. The girl left about 11:30 p.m. or 12. He did not know where the girl lived or worked, but only that her name was Marie or Carol. He remained alone in the apartment for the rest of the night. He admitted that the clothing obtained by the police at his apartment was that worn by him on the night in question.

Mary Dreon, owner of Horgan's Club, testified that defendant and a woman left there between 7 and 9. (Defendant claimed to have been there between 9 and 11 approximately.)

Inspector Hopper testified that the second day after his arrest defendant stated that he was not at the Neptune Court that night, "not to my knowledge," and that between 9:30 and 10:30 he guessed that he was home or might have been in a bar. Upon being accused of the offense, defendant said, "I don't think I did it." In other portions of the statement he denied any participation in the offenses.

### 1. *Accomplice.*

Defendant contends that Mary Ellen was an accomplice as a matter of law, hence required corroboration, and that there was no corroboration. It is well settled that anyone who

participates in an act of sex perversion because of threats and is in fear of great bodily harm is not an accomplice and such victim's testimony need not be corroborated. (*People* v. *Willis* (1954), 129 Cal.App.2d 330 [276 P.2d 853].) ▮ Whether one is an accomplice is a question of fact. (*Idem.*, p. 334; *People* v. *Walker* (1948), 88 Cal.App.2d 265, 268 [198 P.2d 534].) ▮ The jury could reasonably have inferred (and undoubtedly did) from Mary Ellen's testimony that she complied with defendant's demands because she reasonably feared her life would be endangered if she refused. He forced his way into her apartment at knife-point. While there he continued to wave the knife, which she thought had a blade 4-5 inches long. Defendant contends that Mary Ellen had a chance to flee while defendant was walking around the bed, and her failure to do so implies a willing consent. That she could have fled is a conclusion which the jury apparently refused to draw and that refusal is reasonable. The fact that she did not attempt to flee is not inconsistent with a reasonable fear that her life was in danger.

Defendant contends that since the jury acquitted him of the charge of assault with a deadly weapon the jury must have concluded that defendant was unarmed and therefore could not have induced fear. The verdict on the assault count did not necessarily constitute a determination that defendant did not have a knife. After reaching verdicts on the first two counts the jury requested that the court read the law on assault with a deadly weapon. The court then reinstructed that "An assault with a deadly weapon is an unlawful attempt coupled with a present ability to commit a violent injury upon the person of another with a deadly weapon." A juror asked if it would be necessary to produce a weapon and was told no. In response to other questions, the court told the jury that if they found defendant had no intent to use the weapon as such, defendant should be found not guilty and that defendant could be found guilty on the first two counts, but not on the third. A juror then inquired as to the existence of evidence that defendant threatened to cut Mary Ellen. It is apparent that, from the discussion between the court and the jury and from the nature of the assault charged and as defined in the instructions, the jury could have reached their verdict on the basis of the lack of any intent to inflict an injury upon Mary Ellen. The jury may have so determined notwithstanding the fact defendant possessed a knife.

There is no evidence from which it could be held that as a matter of law Mary Ellen was a willing participant and hence an accomplice. It must be remembered that defendant denied being at the apartment at all. It is not a situation where admitting the act, the defendant claims that the woman participated willingly. Even in such case the question would not be one of law, but of fact for the jury. The jury was instructed properly that if it found her to be a willing participant, then she would be an accomplice and her testimony would have to be corroborated.

### 2. *Sufficiency of Evidence.*

Defendant's main contention on this subject is that Mary Ellen was an accomplice and her testimony was not corroborated. We have already answered this contention adversely to defendant. The evidence is sufficient to support the convictions on both the first and second counts. ██ Entry into a home with intent to violate section 288a, Penal Code, is burglary under section 459, Penal Code. (*People* v. *Denningham* (1947), 82 Cal.App.2d 117 [185 P.2d 614].) ██ The element of intent must usually be inferred from the evidence, and when the evidence is sufficient to justify a reasonable inference that such intent existed the verdict may not be disturbed. (*People* v. *Henderson* (1956), 138 Cal.App.2d 505, 509 [292 P.2d 267].) ██ Defendant first attempted to talk his way into the apartment, then forced his way in at knife-point. These facts coupled with what he immediately proceeded to do is ample evidence that he entered the apartment for the purpose of committing a felony, to wit, violation of section 288a, Penal Code. The fact that the jury asked to be reinstructed on the law of assault after reaching verdicts on the first and second counts does not lead to the conclusion, as contended by defendant, that the jury violated the instructions on the law of accomplices and corroboration. It may be presumed in view of the court's full instructions on the subject that the jury determined under the facts that Mary Ellen was not an accomplice. (See *People* v. *Mastrantuono* (1948), 88 Cal.App.2d 178, 183 [198 P.2d 574] ; *People* v. *Walker, supra,* 88 Cal.App.2d 265, 268.)

██ On the sex perversion count, if the jury believed the testimony of Mary Ellen (and it undoubtedly did) the evidence was sufficient to convict. (See *People* v. *Stewart* (1952), 109 Cal.App.2d 334 [240 P.2d 704], and *People* v. *Peterman* (1951), 103 Cal.App.2d 322 [229 P.2d 444].) It should be

borne in mind on both counts, that Mrs. Hinderliter placed defendant at the Neptune Court at the crucial time, and that defendant denied being there.

### 3. *Instructions.*

Defendant has gone over the instructions with a fine tooth comb and in most instances read into them something which is not there. Practically all the instructions are ones that have clearly been held to be proper. In one of the instructions given on alibi, defendant contends that the burden of proving the alibi was equated with the prosecution's burden of proof of guilt, that is, that defendant must prove his alibi beyond a reasonable doubt. There is nothing in the instruction to support this contention. It is taken from CALJIC No. 31, which was approved in *People* v. *Chambers* (1951), 102 Cal.App.2d 696, 699 [228 P.2d 93]. By the language of the instruction a defendant need only create a reasonable doubt as to his presence in order to be entitled to an acquittal. There is no statement that defendant must prove his alibi beyond a reasonable doubt.

The court gave CALJIC No. 8 that ''The applicability of some of these instructions will depend upon the conclusions you reach as to what the facts are. . . . If an instruction applies only to a state of facts which you find does not exist, you will disregard the instruction.'' Defendant contends that this instruction prevented the jury from considering the charge in its entirety. This argument was rejected in *People* v. *Chessman* (1951), 38 Cal.2d 166, 184 [238 P.2d 1001]. The court does not know in advance what the jury will find the facts to be, for example, whether or not the jury would find Mary Ellen to have been a willing participant. Therefore, of necessity the court must instruct on legal principles, some of which may be inapplicable, depending upon what the facts are found to be. (See also *People* v. *Casey* (1926), 79 Cal.App. 295, 302 [249 P. 525].)

Instructions were given based on CALJIC No. 821 (testimony of accomplice must be corroborated) and No. 829 (testimony of accomplice must be viewed with distrust). Defendant contends that these instructions are inconsistent. There is no inconsistency. If the jury found that Mary Ellen was an accomplice it must view her testimony with distrust, even though corroborated, giving her testimony ''the weight to which you find it to be entitled . . .'' Considered together

these instructions are an explanation of the potentially applicable law.

The court gave CALJIC No. 112 to the effect that the jury must consider the evidence applicable to each alleged offense as though it were the only accusation, and must find as to each count uninfluenced by its verdict as to any other count. This instruction is a correct statement of the law. Defendant's first contention is that thereby the jury was instructed in dealing with the first two counts to disregard the fact that the jury found on the third count that defendant did not have a knife. As we have heretofore pointed out, this was not necessarily the jury's finding on the third count. Moreover, the instruction does not tell the jury to disregard its findings on the facts as regards any count in determining any other count in which those facts are relevant. It merely tells the jury that if based on those findings it finds that the crime charged in a particular count was or was not committed, such finding should not influence the jury in determining whether or not the facts so found proved the other crimes charged. Defendant contends further that as to the first two counts a single offense is charged and that the second offense is necessarily included in the first offense, and that the jury should have been charged that it could not find defendant guilty under both the first and second counts.

In *People* v. *Greer* (1947), 30 Cal.2d 589 [184 P.2d 512], the court said : ''The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense.'' (P. 596.) The offenses charged were burglary, involving an entry with felonious intent, and an act of sex perversion. The actual commission of the felony constitutes no part of the burglary. (See *People* v. *Morlock* (1956), 46 Cal.2d 141 [292 P.2d 897] ; *People* v. *Goodman* (1958), 159 Cal.App.2d 54 [323 P.2d 536] ; *People* v. *Stone* (1957), 155 Cal.App.2d 259 [318 P.2d 25].) The act of sex perversion could have been committed without necessarily committing a burglary, and the act of burglary without necessarily committing the act of perversion. Burglary was committed the moment defendant entered with the intent to commit the felony, regardless of whether he committed it after he entered. Each offense is separately defined and made punishable by the Penal Code. Defendant's contention that he is being subjected to double punishment for

one criminal act also must be rejected in light of the above authority, since two distinct offenses were charged.

### 4. *Admission of Evidence.*

 Mrs. Dreon, coowner of Horgan's Bar who testified as to the time when defendant and a woman were in the bar, testified without objection that she had given Police Lieutenant Nordling over the phone the same time she testified to at the trial. Over defendant's objection Lieutenant Nordling was permitted to testify to this conversation with Mrs. Dreon. The conversation was hearsay and should not have been admitted. However, it was merely cumulative and was not prejudicial in view of the fact that defendant permitted Mrs. Dreon to testify to the same matter.

 On cross-examination Mary Ellen, who testified at the trial that defendant said "Blow it," was asked if at the preliminary examination she had said that defendant did not say anything while on her bed. Admitting this, Mary Ellen stated that she "didn't want to say it before." On redirect the prosecution asked her if the day after the affair she told Officer Showalter that defendant had said something to her. She then said that she had told the officer that defendant had said the exact words she used on her direct testimony. Officer Showalter, over objection, corroborated Mary Ellen's testimony.

 Ordinarily, prior consistent statements cannot be introduced to rebut impeaching evidence. However, one exception to this rule is the admissibility of prior consistent statements in answer to an express or implied charge that the trial testimony was recently fabricated. (*People* v. *Carter* (1957), 48 Cal.2d 737, 749 [312 P.2d 665]; *People* v. *Hardenbrook* (1957), 48 Cal.2d 345, 351 [309 P.2d 424]; *Davis* v. *Tanner* (1927), 88 Cal.App. 67, 73 [262 P. 1106]; *Bickford* v. *Mauser* (1942), 53 Cal.App.2d 680, 684 [128 P.2d 79]; *People* v. *Kynette* (1940), 15 Cal.2d 731 [104 P.2d 794]; *People* v. *Weatherford* (1947), 78 Cal.App.2d 669, 696 [178 P.2d 816].) The dissenting opinion in *Bickford* v. *Mauser, supra,* 53 Cal.App.2d at page 689, stated that the exception to the rule of admissibility is limited to meeting a charge of recent fabrication and that in that case there was no such charge made; there was simply a situation of impeachment by evidence of prior inconsistent statements. While there is no case which flatly considers the question raised by the dissent in the Bickford case, a recent Supreme Court case

appears to indicate that the exception may apply without any direct charge of fabrication. In *People* v. *Hardenbrook, supra,* 48 Cal.2d 345, 351, testimony of a prior statement was admitted for the limited purpose of rehabilitation. A witness testified to a conversation with the defendant which the defendant denied. The prosecution offered a witness who testified as to prior statements of the first witness concerning the conversation. No charge of recent fabrication was made yet the prior statements were held admissible. In *People* v. *Carter, supra,* 48 Cal.2d 737, it was held error to exclude testimony of prior statements offered by the defendant to rehabilitate impeaching testimony. The opinion stated that the defendant had a right to introduce this testimony ''to rebut the prosecution's charge that his story was a recent fabrication.'' (P. 749.) Just how this charge was made does not appear in the record. In our case Mary Ellen's testimony was vital to the prosecution. The very fact that defendant sought to impeach her on an important circumstance of the crime, proving a statement at the preliminary examination contrary to that made at the trial, is in effect a charge of recent fabrication. We see no error in the court's ruling. In any event, there was no prejudice in the admission of the testimony. The inconsistent statement as to what defendant said to Mary Ellen was explained by her on cross-examination when she admitted the inconsistency stating that she did not want to relate what defendant said to her. The explanation is plausible under the circumstances. The weight to be given to it was a matter for the jury. However, it is not reasonable to assume that without the rehabilitation testimony the verdicts of the jury would have been different.

### 5. *Fair Trial.*

 Inspector Hopper testified on rebuttal for the prosecution as to evasive replies given him by defendant the second day after the affair. No objection was made to this testimony. On cross-examination defendant brought out that in addition to the evasive replies defendant flatly denied being at the Neptune Court or committing the crimes charged. Defendant contends that the prosecutor deprived him of a fair trial in bringing out only those portions of the statements to which defendant gave ambiguous answers. A defendant's responses to accusatory statements may be received under the admission exception to the hearsay rule. (*People* v. *Davis* (1954), 43 Cal.2d 661, 670 [276 P.2d 801] ; *People* v.

*Simmons* (1946), 28 Cal.2d 699, 712 [172 P.2d 18].) ■■■ Defendant made the first reference to the statement and did not object to the prosecution offering only portions of it. ■■ Where evidence is not objected to nor a motion to strike made, any claim of error is deemed waived. (*People* v. *Coontz* (1953), 119 Cal.App.2d 276, 280 [259 P.2d 694]; *People* v. *McMonigle* (1947), 29 Cal.2d 730, 743 [177 P.2d 745].) We find nothing to indicate that defendant did not get a fair trial.

The judgment is affirmed.

Wood (Fred B.), J., and Tobriner, J., concurred.

A petition for a rehearing was denied June 16, 1959, and appellant's petition for a hearing by the Supreme Court was denied July 15, 1959.