CORRIGAN, J., Concurring and Dissenting.
I respectfully dissent from the majority’s analysis. The majority concludes Evidence Code section 1108[1] permits the jury to draw a propensity inference from evidence that the defendant committed multiple charged crimes. In my view, such an instruction contradicts long-standing precedent, expands multiple sections of the Evidence Code in ways not contemplated by the Legislature, and sows the seeds for confusion and unintended consequences. Because the error in this case was clearly harmless, however, I concur in the result.
Section 1108 governs the admission of evidence, nothing more. It creates a narrowly crafted exception to the long-standing ban on propensity evidence. Specifically, it provides that evidence of a defendant’s sex crimes on other occasions can be admitted in a new sex crime trial to prove the defendant’s propensity to commit such offenses. Section 1108 addresses evidence of uncharged crimes. It says nothing about the inferences permissible from evidence of charged crimes.
A. General Principles
The majority’s reasoning fails to distinguish between evidence and inferences a jury may draw from the evidence. “ ‘Evidence’ means testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact.” (§ 140.) “An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action.” (§ 600, subd. (b); see People v. Reliford (2003) 29 Cal.4th 1007, 1014 *1170 [130 Cal.Rptr.2d 254, 62 P.3d 601] (Reliford) [describing this distinction].) “[A]n inference is not itself evidence; it is the result of reasoning from evidence.” (Assem. Com. on Judiciary, com. on § 600, reprinted at 29B pt. 2 West’s Ann. Evid. Code (1995 ed.) p. 4.)
The issues presented here implicate another important distinction about how the jury can reach conclusions from the evidence in a multiple-count case. In the absence of a statute to the contrary, all relevant evidence is admissible at trial. (§ 351.) Unless evidence is admitted for a limited purpose, or against a specific party, evidence admitted at trial may generally be considered for any purpose.[2] A corollary of this rule is that the jury is free to apply its factual findings on one count in deciding any other count to which those facts are relevant. (People v. Beagle (1972) 6 Cal.3d 441, 456 [99 Cal.Rptr. 313, 492 P.2d 1].) However, while the jury is free to apply relevant factual findings across counts, it is admonished that it must return a separate verdict on each count (CALCRIM No. 3515; CALJIC No. 17.02) and must decide each charge “uninfluenced by its verdict as to any other count” (People v. Bias (1959) 170 Cal.App.2d 502, 510 [339 P.2d 204], italics added, cited with approval in People v. Beagle, supra, 6 Cal.3d at p. 456). In other words, the jury may not simply conclude that because it found the defendant guilty of one count, he must be guilty of the others. The majority’s holding casts aside this established precedent. This aspect of the case is discussed at greater length below. (See, post, at pp. 1178-1180.)
B. The Long-standing Rule Against Propensity Evidence
One example of limited admissibility arises in the context of other crimes evidence. Evidence of a person’s character, also known as propensity evidence, is inadmissible to prove conduct in conformity with that character trait. (§ 1101, subd. (a) (section 1101(a)); Cal. Law Revision Com. com., reprinted at 29B pt. 3B West’s Ann. Evid. Code (2009 ed.) foil. § 1101, pp. 221-222.)[3] This is the familiar ban on propensity evidence; Uncharged conduct generally cannot be admitted to prove the defendant is disposed to commit crimes. Section 1101(a) codifies this general rule. Notwithstanding that rule, section 1101, subdivision (b) (section 1101(b)) clarifies that uncharged acts can be admitted for other relevant purposes, such as proving motive, opportunity, intent, and so on, but they may not be admitted to prove *1171 the defendant had a disposition to commit similar bad acts. When a defendant’s uncharged acts are admitted for a relevant purpose other than to support a propensity inference, an instruction is often given that explains this limited purpose to the jury. (§ 355; CALCRIM No. 375.)
The prohibition on propensity evidence is not merely statutory, however. In enacting section 1101(a), the Legislature codified a rule of evidentiary exclusion that is at least three centuries old in the common law. (People v. Alcala (1984) 36 Cal.3d 604, 630-631 [205 Cal.Rptr. 775, 685 P.2d 1126]; 1 Wigmore, Evidence (3d ed. 1940) § 194, pp. 646-647; see People v. Falsetta (1999) 21 Cal.4th 903, 913 [89 Cal.Rptr.2d 847, 986 P.2d 182] (Falsetta).) “The ban on propensity evidence dates back to English cases of the seventeenth century.” (U.S. v. Castillo (10th Cir. 1998) 140 F.3d 874, 881.)[4] Early American courts retained the rule, and it has been enforced throughout our nation’s history. (McKinney v. Rees, supra, 993 F.2d at pp. 1380-1381; U.S. v. Castillo, at p. 881; see, e.g., Boyd v. United States (1892) 142 U.S. 450, 458 [35 L.Ed. 1077, 12 S.Ct. 292] [admission of defendants’ prior crimes was prejudicial error].) Today, “[c]ourts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant’s evil character to establish a probability of his guilt.” (Michelson v. United States (1948) 335 U.S. 469, 475 [93 L.Ed. 168, 69 S.Ct. 213], fn. omitted; see People v. Ewoldt (1994) 7 Cal.4th 380, 392 [27 Cal.Rptr.2d 646, 867 P.2d 757]; McKinney v. Rees, at p. 1381 & fn. 2 [listing the 37 states where the rule has been codified and asserting the rule persists in the common law precedents of the 12 other states and the Dist. of Columbia].)
Thus, allowing a defendant to be convicted because of his bad character is generally impermissible not only under California law (§ 1101(a)) and the Federal Rules of Evidence (Fed. Rules Evid., rule 404(b), 28 U.S.C.), but is also “contrary to firmly established principles of Anglo-American jurisprudence” (McKinney v. Rees, supra, 993 F.2d at p. 1380). “The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance *1172 tends to prevent confusion of issues, unfair surprise and undue prejudice.” (Michelson v. United States, supra, 335 U.S. at pp. 475-176, fn. omitted.)
C. Section 1108, Subdivision (a) Is a Narrow Exception to the Rule Against Propensity Evidence
In enacting section 1108, the Legislature created a narrow exception to the venerable rule prohibiting the use of uncharged bad acts to prove propensity. The narrowness of the lawmakers’ intention is reflected in both the language of the statute and the legislative history.
1. Statutory Language Is Limited to Admitting Evidence of Uncharged Crimes
Section 1108, subdivision (a) (section 1108(a)) states that, when a defendant is on trial for a sex offense, “evidence of the defendant’s commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.” Until recently, courts have generally interpreted this language to mean that section 1108(a) permits the admission into evidence of a defendant’s uncharged sex crimes even if this evidence is relevant only to show criminal propensity. (E.g., Reliford, supra, 29 Cal.4th at p. 1009; Falsetta, supra, 21 Cal.4th at pp. 911, 917-919; People v. Medina (2003) 114 Cal.App.4th 897, 902 [8 Cal.Rptr.3d 158]; People v. Britt (2002) 104 Cal.App.4th 500, 506 [128 Cal.Rptr.2d 290]; but see People v. Wilson (2008) 166 Cal.App.4th 1034 [83 Cal.Rptr.3d 326] [approving instruction that invited the jury to infer specific intent from findings on the charged offenses].)
Although section 1108 does not expressly state that evidence of the other sex offense to be admitted must relate to an uncharged crime, this conclusion is fairly implied from its wording. The statute states that “[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant’s commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to section 352.” (§ 1108(a), italics added.) The majority’s analysis relies heavily on the absence of language limiting the provision to “uncharged” offenses and the dictionary definition of “another.” But, read in context, the word “another” clearly suggests the statute is referring to offenses “other” than those for which the defendant is currently on trial. The whole point of section 1108 is to make admissible a certain type of “bad act” evidence that is otherwise inadmissible under section 1101. Evidence pertaining to the crimes for which the defendant is on trial is admissible in its own right and not “made inadmissible by Section 1101.”
Despite this clear limitation, the majority insists section 1108 “necessarily extends to evidence of both charged and uncharged sex offenses” (maj. opn., *1173 ante, at p. 1162) because the Legislature intended to authorize reliance on propensity evidence with respect to sex offenses, and charged offenses are just as relevant as uncharged ones. This argument misconstrues the difference between evidence and inferences based on evidence. Section 1108 authorizes the admission of uncharged sex crime evidence, even when its only relevance is to show propensity. As a result, the statute necessarily allows a propensity inference to be drawn from evidence of uncharged sex crimes. (See Reliford, supra, 29 Cal.4th at pp. 1014—1015.) However, nothing in the language of section 1108 sanctions or encourages the drawing of a propensity inference from all evidence of sex crimes, as the majority assumes. The statute does not even mention the inference at issue here.
The statute also requires that the other crimes evidence “is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.” (§ 1108(a), italics added.) The significance of this reference to section 352 is discussed at pages 1176-1178, post.
Finally, the Legislature’s intent that section 1108 govern the admission of uncharged misconduct is clear from subdivision (b), which requires that the prosecution disclose other crimes evidence to the defense before trial. Subdivision (b) makes no sense when the evidence at issue relates to charged offenses. Pretrial discovery rules already require disclosure of evidence pertaining to the charged crimes. When applied to evidence of charged offenses, subdivision (b) is superfluous. We generally avoid interpretations that render any part of a statute superfluous. (People v. Aguilar (1997) 16 Cal.4th 1023, 1030 [68 Cal.Rptr.2d 655, 945 P.2d 1204].) The majority does not attempt to resolve this problem.
2. Legislative History Supports a Limited Reading of Section 1108(a)
In addition to the statutory language, the legislative history uniformly shows that the Legislature was concerned with admitting evidence of uncharged sex crimes when it enacted section 1108. For example, an analysis prepared by the Senate Committee on Criminal Procedure described the “key issue” presented by Assembly Bill No. 882 as follows: “Under current law evidence that a defendant has committed other uncharged crimes, for which the defendant has not been convicted, is generally inadmissible to prove a specific crime. [][] Should an exception to that rule be made to allow the introduction of evidence of uncharged sexual acts to show that the defendant committed the sexual offense in question?” (Sen. Com. on Criminal Procedure, Analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended May 15, 1995, pp. 1-2, italics added, capitalization omitted.) In the same report, the bill’s author explained that, under current law, evidence the *1174 defendant had committed sexual offenses “against other victims is not necessarily admissible in a trial where the defendant is being accused of a subsequent sexual offense.” {Id. at p. 3, italics added, capitalization omitted.)
A floor analysis from the Assembly was in accord. It stated that the bill would establish a general rule of admissibility in sex crime cases “for evidence that the defendant has committed offenses of the same type on other occasions.” (Assem. Com. on Public Safety, Off. of Assem. Floor Analyses, 3d reading analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended May 15, 1995, p. 1, italics added.) The author also described the bill as establishing “a presumption of admissibility for evidence that the defendant has committed similar crimes on other occasions.” (Id. at p. 2, italics added.) In these statements, “other” logically means “other than the case for which the defendant is on trial.”
There is more. In a Senate Judiciary Committee analysis, the question was raised whether “the proposed use of character evidence of the defendant’s commission of another sexual offense to prove the commission of the charged sexual offense [should] be limited to other similar sexual offenses.” (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended June 27, 1995, p. 3, italics added, capitalization omitted.) In the same report, the bill’s author was quoted as saying that, under current law, evidence the defendant had committed sex crimes “ ‘against other victims' ” was often not admissible, and the bill would “ ‘amend the Evidence Code so as to establish, in sexual offense actions, a presumption of admissibility for evidence that the defendant has committed similar crimes on other occasions.' ” (Id. at p. 9, italics added.) These repeated references to inadmissibility of other crimes evidence make no sense if understood to refer to charged crimes because evidence of charged offenses is clearly admissible.
This sampling of the available legislative history consistently shows that section 1108 was intended only to permit the admission of uncharged offenses. Significantly, nothing in the available legislative history for Assembly Bill No. 882 suggests the Legislature ever contemplated the use of section 1108 to support an instruction that invites jurors to draw a propensity inference from evidence pertaining solely to charged sex crimes.
Moreover, the contemplated instruction does not serve the legislative purpose behind section 1108. “Available legislative history indicates section 1108 was intended in sex offense cases to relax the evidentiary restraints section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant’s other sex offenses in evaluating the victim’s and the defendant’s credibility.” (Falsetta, supra, 21 Cal.4th at p. 911, italics added.) Because of the serious and secretive nature of sex *1175 crimes, the general policy of exclusion is outweighed by a more pressing need to permit admission of evidence that would otherwise be excluded. (Ibid.) But the case before us does not involve the admission of otherwise impermissible evidence. Rather, the instruction here invites the jury to draw a specific inference from evidence that was admissible without regard to section 1108. An inference is not evidence. (§ 600.)
D. Extending Section 1108(a) to Permit a Propensity Inference for Charged Crimes Conflicts with Fundamental Principles
Section 1108 is a narrow rule authorizing the admission of evidence of the defendant’s uncharged sex crimes, subject to section 352, even if those crimes are only relevant to show the defendant’s propensity to commit sex crimes.
The present case does not concern the admission of evidence, nor does it concern evidence of a defendant’s uncharged sex crimes. The question here is whether the jury should be instructed that it can infer, from a finding that the defendant committed one of the charged sex crimes, that he has a propensity to commit such offenses and, thus, may have committed the other sex crimes for which he is on trial. Section 1108 simply does not address this question. Although section 1108 may reflect the Legislature’s increased willingness to tolerate propensity evidence in the context of sex crimes, the statute was carefully crafted to permit the admission of evidence of uncharged crimes subject to the balancing test of section 352. In light of the historically grounded, constitutionally significant rule against propensity evidence (see Falsetta, supra, 21 Cal.4th at pp. 914-915), this court is not free to expand section 1108’s exception to this rule beyond its narrow boundaries. The majority’s analysis violates the canon that statutory exceptions such as the one set forth in section 1108 must be narrowly construed. (City of National City v. Fritz (1949) 33 Cal.2d 635, 636 [204 P.2d 7].)
Moreover, the inference the challenged instruction encourages is not a permissible one. The jury is generally forbidden from inferring criminal propensity from the existence of multiple charges. Although section 1108(a) implicitly allows the jury to infer propensity from evidence that the defendant committed uncharged sex crimes, it does not abrogate the broader rule that a conviction on one count cannot be relied upon to convict on other counts. Section 1108 says nothing about a propensity inference drawn from charged crimes. Because it amounts to a bootstrapping of verdicts in multiple-count cases, such an inference remains improper.
*1176 1. A Propensity Inference Based on Charged Crimes Lacks the Safeguard of Section 352
In Falsetta, supra, 21 Cal.4th 903, this court considered a due process challenge to section 1108. We observed that, “[f]rom the standpoint of historical practice,” the general rule against admitting propensity evidence was “unquestionably . . . one of long-standing application.” (Falsetta, at p. 913.) Given recent developments relaxing this rule in the context of sex offenses, we found it “unclear whether the rule against ‘propensity’ evidence in sex offense cases should be deemed a fundamental historical principle of justice” not subject to legislative alteration. (Id. at p. 914.) However, even assuming the rule could be considered fundamental from a historical perspective, we concluded section 1108’s “limited exception” to it did not offend due process because section 352 would prevent unfairness to the defense. (Falsetta, at p. 915.)
We described section 352 as “a safeguard that strongly supports the constitutionality of section 1108” (Falsetta, supra, 21 Cal.4th at p. 916) and concluded, “the trial court’s discretion to exclude propensity evidence under section 352 saves section 1108 from defendant’s due process challenge.” (Falsetta, at p. 917.) “ ‘By subjecting evidence of uncharged sexual misconduct to the weighing process of section 352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume' an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. (. . . § 352.) This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence. [Citation.] With this check upon the admission of evidence of uncharged sex offenses in prosecutions for sex crimes, we find that. . . section 1108 does not violate the due process clause.' ([People v.] Fitch [(1997)] 55 Cal.App.4th [172,] 183 [63 Cal.Rptr.2d 753], italics added.)” (Falsetta, at pp. 917-918.)
Clearly, the trial court’s broad discretion to exclude propensity evidence under section 352 was critical to our holding that section 1108 was constitutional. (Falsetta, supra, 21 Cal.4th at pp. 917-918.) However, section 352 has no logical application to the issue in this case, which is whether the jury can be instructed to draw a propensity inference from evidence properly admitted to show that the defendant committed the charged offenses. As noted, section 352 concerns only the admission of evidence. It allows the court to exclude relevant evidence if it is unduly prejudicial, time consuming, or confusing. The familiar section 352 balancing test can be easily applied in deciding whether to admit evidence of uncharged offenses; however, it provides no basis to exclude otherwise competent and appropriate evidence of the charged offenses.
*1177 The majority opinion attempts to graft a section 352 safeguard onto its holding by stating that trial courts should “ ‘apply the criteria of section 352’ ” in determining whether to instruct the jury to draw a propensity inference from the charged offenses. (Maj. opn., ante, at p. 1163.) The opinion offers no guidance on how this analysis should be conducted, and there is none to be found elsewhere. Conducting a section 352 analysis to decide whether to give a jury instruction is unprecedented. This novel expansion of the analysis required in deciding upon instructions is created because the majority is extending section 1108 to allow something the Legislature never contemplated.
Like sections 1101 and 1108, section 352 specifically addresses the discretion of the trial court to exclude relevant evidence. It confers this authority when the proffered evidence would (1) require undue consumption of time, (2) create a substantial danger that the jury might be confused or misled, or (3) create a substantial danger of undue prejudice. (§ 352.) The first two factors authorize a trial court to exclude evidence of uncharged offenses entirely if it poses a substantial risk of undue confusion or time consumption. But these factors are necessarily inapplicable when the evidence is relevant and admissible to prove a charged offense. Moreover, at the jury instruction stage, presentation of the evidence will have concluded. Unduly confusing or misleading evidence relating to the charges will have been excluded under normal application of the rules of evidence.
All that would remain of a purported section 352 analysis would be the question of undue prejudice. Yet the majority does not explain how a defendant could possibly be prejudiced by a correct explanation of the applicable law, which is the only question before the court in considering proposed jury instructions. The majority gives no guidance on how a prejudice analysis should be performed in such a context. What factors should the court rely upon in deciding whether to give or reject a propensity instruction? The majority is silent.
Although section 352 can operate as a reasonable safeguard to prevent unfairness in the context of admitting evidence of uncharged crimes, it cannot serve the same purpose in the context of an instruction that encourages the drawing of a propensity inference from charged crimes. Without the safeguard of section 352, or a reasonable means of assessing undue prejudice to the defendant, it is questionable whether a propensity instruction like the one here is consistent with due process.
*1178 ' 2. A Propensity Inference for Charged Crimes Improperly Bootstraps Verdicts on Multiple Counts
The majority’s analysis elides an important distinction between the cross-admissibility of evidence on multiple counts and the jury’s duty to decide each count separately, uninfluenced by its verdict on any other count.
A propensity instruction is not needed to permit the jury to consider evidence across multiple counts if the evidence is relevant to prove a fact at issue in other counts. Jurors can consider all the evidence admitted in a case to the extent that evidence is relevant to prove any count. If a fact is relevant in deciding multiple charges, the jury can consider the admitted evidence with regard to each count that fact has “any tendency in reason” to prove. (§210 [defining relevant evidence].)
Whereas the jury is generally free to apply evidence admitted on one count when it is relevant to other charges, courts in this state have long held that the jury may not allow its verdict on one count to influence its determination about whether the other counts have been proven. In People v. Magee (1963) 217 Cal.App.2d 443, 468 [31 Cal.Rptr. 658], the court found no error in an instruction telling the jury to “consider the evidence applicable to each offense separately from the other offenses and state its finding as to each count uninfluenced by its verdict as to any other count or defendant.” Likewise, in People v. Bias, supra, 170 Cal.App.2d at page 510, the court approved of a CALJIC instruction telling the jury to consider the evidence on each alleged offense as if each count were the only accusation and make findings on each count uninfluenced by its verdict as to any other count. This was a proper statement of law because “the instruction does not tell the jury to disregard its findings on the facts as regards any count in determining any other count in which those facts are relevant. It merely tells the jury that if based on those findings it finds that the crime charged in a particular count was or was not committed, such finding should not influence the jury in determining whether or not the facts so found proved the other crimes charged.” (People v. Bias, at p. 510, italics added.) We cited People v. Bias with approval in People v. Beagle, supra, 6 Cal.3d at page 456, noting that an instruction telling the jury to decide each count separately, uninfluenced by its verdicts on other counts, would not have allowed the jury to disregard factual findings in determining other counts to which those facts were relevant.
Pattern jury instructions today are consistent with this settled law. CALJIC No. 17.02 states: “Each Count [other than Count[s] . . .] charge[s] a distinct crime. You must decide each Count [other than Count[s] . . .] separately. The defendant may be found guilty or not guilty of [any or all] [either or both] of the crimes charged [in Count[s] . . .]. Your finding as to each Count must be *1179 stated in a separate verdict.” CALCRIM No. 3515 states: “Each of the counts charged in this case is a separate crime [except for Counts . . .]. You must consider each count separately and return a separate verdict for each one [except for Counts . . .].”
The instruction the majority now approves invited the jury to do exactly what these instructions, and 50 years of precedent, forbid. The modified version of CALCRIM No. 1191 given here told the jury, in part: “If you decide that the defendant committed one of these charged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit the other charged crimes of rape or sodomy, and based on that decision also conclude that the defendant was likely to and did commit the other offenses of rape and sodomy charged.” (Italics added.) Thus, if the jury reached a particular “decision,” or verdict, as to one of the charges, the instruction told the jury it could rely on this decision to conclude “that the defendant was likely to and did commit” the other charged offenses. The instruction sanctions a bootstrapping of verdicts we have long considered improper. For the jury to apply a verdict against the defendant on one count to conclude the defendant was likely to commit, and did commit, the other counts violates the well-settled rule that the jury must decide each count uninfluenced by its verdict on other counts.[5]
E. A Propensity Instruction Is Unnecessary and Potentially Confusing
In Reliford, we approved the giving of CALJIC No. 2.50.01 to explain how jurors are to evaluate evidence of uncharged sexual misconduct admitted pursuant to section 1108. (Reliford, supra, 29 Cal.4th 1007.) A similar instruction advises jurors how to consider other crimes evidence that was admitted for a noncharacter purpose pursuant to section 1101(b). (CALCRIM No. 375; CALJIC No. 2.50.) These instructions are valid and necessary because they explain the limited purpose for which evidence of a defendant’s other crimes has been admitted. Section 1101(b) clarifies that evidence of other crimes may be admitted for a purpose other than proof of the defendant’s character. An instruction is needed to advise the jury of the permissible purpose, such as intent, motive, or identity, for which the *1180 evidence has been admitted. Similarly, section 1108 describes a narrow exception to the general rule against admitting character evidence. When extensive evidence of a defendant’s prior or subsequent bad conduct has been presented, the jury needs to hear why this potentially inflammatory, collateral evidence is relevant and how it may properly be considered in deciding whether the defendant committed the charged crimes.
The instruction here is different. Evidence pertaining to the charged crimes is not admitted for a limited purpose, and no instruction is needed to tell the jury of its possible relevance. Evidence that the defendant committed the charged crimes is, by definition, relevant and admissible. This instruction draws the judge into the adversarial process by encouraging the jury to draw a specific, and generally prohibited, conclusion from the evidence. The case against a defendant is obviously strengthened when the evidence shows he committed a series of similar crimes. This holds true for any type of criminal trial, not just sex offenses. The prosecution’s case is stronger in a multiple-count case not because the jury can, or should be encouraged to, judge the defendant based on his character, but rather because repeated instances of the same behavior logically tend to show that the defendant acted with a plan or harbored a certain mental state when committing the crimes in question. As we explained in People v. Ewoldt, supra, 7 Cal.4th 380, 402, “ ‘[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act... .’ [Citation.]”
The majority opinion contends it would be anomalous for us to require that a “propensity instruction” be given on request for uncharged offenses (see Falsetta, supra, 21 Cal.4th at p. 924) but not permit the same instruction for charged offenses because both are equally relevant to show a propensity to commit sex crimes. There is no anomaly. An instruction explaining the proper use of evidence admitted for a limited purpose under a narrow statutory exception is analytically and qualitatively different from an instruction inviting the jury to draw a specific, typically impermissible, inference from evidence that was admitted for all purposes.
An example from outside the sex offense context illustrates the point: When a defendant’s similar uncharged conduct is offered under section 1101(b), the court will instruct the jury that evidence of the uncharged offense has been offered for a limited purpose and may only be considered in support of an inference related to that limited purpose. (CALCRIM No. 375.) If other similar offenses have been charged, does the court also have to instruct that evidence generally admitted to prove the charged offenses can be used to *1181 support an inference of intent with respect to the other charged offenses? If the charged offenses would not be similar enough to be admissible under People v. Ewoldt, supra, 7 Cal.4th 380, would the defense be entitled to an instruction limiting how this otherwise admissible evidence should be used? We have never so held, in either case.
Moreover, the majority’s holding will potentially create confusion and inconsistent results. For example, suppose the defendant is on trial for five murders and five rapes. Five victims were each raped and then murdered in a similar manner. A propensity instruction like the one at issue here tells the jury that, if it decides the defendant committed one of the charged rapes, it can infer he had a propensity to commit rape and thus may have committed the other charged rapes. The giving of such an instruction raises problems, however, because a propensity inference is impermissible in deciding the multiple murders. In such a case, one could argue that a propensity-to-rape instruction would make the jury more inclined to draw a forbidden propensity inference with respect to the charged murders. Should the defendant be entitled to an instruction that directs the jury not to infer a propensity to murder from those charges? If so, might not defendants be entitled to the same instruction in any case involving multiple charges of similar, nonsexual offenses? Again, we have never so held.
The issue becomes even more complicated if the prosecution has also presented evidence of uncharged misconduct under section 1101(b) or 1108. CALCRIM Nos. 375 and 1191 explain that the jury need only find that the defendant committed the uncharged acts by a preponderance of the evidence before it can rely on the uncharged acts to support a specific inference. If the same preponderance standard is applied to charged offenses, as it was in People v. Quintanilla (2005) 132 Cal.App.4th 572, 581 [33 Cal.Rptr.3d 782], there is a serious risk of confusion. Requiring the jury to apply two standards of proof to evidence of the same crime would inevitably lead to confusion and could potentially erode the presumption of innocence. (See id. at p. 583.) If a reasonable doubt standard is applied to the charged offenses instead, as was the case here, the instructions would require the jury to juggle two separate standards of proof for the same type of evidence—a preponderance standard for uncharged misconduct, and a reasonable doubt standard for misconduct that has been charged—before they could draw the inferences in question. It is difficult to imagine that a juror would not be confused by such a set of instructions.
This confusion is entirely avoidable. Juries have never been instructed about the reasonable inferences they can draw from the relevant facts of the charged crimes. There is no need for them to be so instructed in cases involving multiple charged sex offenses. The instruction is not necessary to *1182 explain the relevance of evidence admitted for a limited purpose, because the evidence is not limited. Further, the inference the instruction encourages is not authorized by section 1108. The instruction risks confusing the jury and, in some circumstances, prejudicing the defendant. It will set a precedent for a similarly confusing instruction under section 1101(b), and may require clarifying instructions for the defense in cases involving a mixture of sex crimes and other offenses. Inferences arising from the charged offenses are best considered at the joinder and severance stage of trial, not as part of the jury’s charge. For these reasons, I believe the instruction is seriously flawed and should not be given. Indeed, courts and advocates should note that the majority was careful to point out the limits of its holding. It expressly did not decide whether an instruction like the one here should be given in future cases.
However, because the case against this defendant was particularly strong, the error was harmless. In addition to testimony from each of the five victims, DNA testing confirmed defendant’s involvement in four of the rapes. Strong similarities among the crimes also mitigated prejudice from the instruction, because the jury could have properly considered these similarities for non-character purposes, as we discussed in People v. Ewoldt, supra, 7 Cal.4th at page 402. On this record, it is not reasonably probable that the defendant would have obtained a more favorable result absent the propensity instruction. (People v. Watson (1956) 46 Cal.2d 818, 837 [299 P.2d 243].)
Werdegar, J., concurred.

 All statutory references are to the Evidence Code.

 If evidence has been admitted for a limited purpose, the jury will be instructed to restrict its consideration of the evidence accordingly. (§ 355.) To this end, CALCRIM No. 303 states: “During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other.”

 The issue in this case concerns character evidence offered to prove conduct. Character evidence admitted to attack or support a witness’s credibility is addressed in sections 786 through 790, and is not implicated here.

 Reference was made in Hampden’s Trial (K.B. 1684) 9 How.St.Tr. 1053, 1103, to a forgery case in which the court had excluded evidence of a defendant’s prior forgeries. “Similarly, in Harrison’s Trial, the Lord Chief Justice excluded evidence of a prior wrongful act of a defendant who was on trial for murder, saying to the prosecution: ‘Hold, what are you doing now? Are you going to arraign his whole life? Away, away, that ought not to be; that is nothing to the matter.’ 12 How.St.Tr. 834 (Old Bailey 1692).” (McKinney v. Rees (9th Cir. 1993) 993 F.2d 1378, 1380.)

 Instructing the jury to draw a propensity inference from charged crimes also runs counter to our joinder jurisprudence. The potential prejudice that can result from the presentation of evidence on multiple charged crimes is generally assessed at the joinder and severance stage of proceedings. The joinder and severance rules presuppose that a jury can legitimately consider evidence of all counts in deciding each count. In ruling on a severance motion, the court must determine whether trial of the various charges together will create a risk of undue prejudice, (People v. Ruiz (1988) 44 Cal.3d 589, 605 [244 Cal.Rptr. 200, 749 P.2d 854].) The majority provides no guidance as to whether, in cases alleging multiple sex crimes, this analysis will now have to consider the potential prejudice from a “propensity instruction” like the one given here.